```
          IN THE UNITED STATES DISTRICT COURT FOR THE

                       DISTRICT OF NEBRASKA

SUSAN M. ANDERSEN,            )
                              )
             Plaintiff,       )        4:10CV3144
                              )
        v.                    )
                              )
MICHAEL J. ASTRUE,            )        MEMORANDUM OPINION
Commissioner of the Social    )
Security Administration,      )
                              )
             Defendant.       )
_____)
```

This matter is before the Court for judicial review of a final decision of the defendant Commissioner of the Social Security Administration ("Commissioner") pursuant to 42 U.S.C. §§ 405(g), 1382(c)(3) of the Social Security Act (the "Act"). The Commissioner denied Susan M. Andersen's (Andersen) application for disability benefits and supplemental social security income benefits, finding Andersen was not under a disability from February 2, 2001, the alleged onset date, through August 25, 2009, the date of the Administrative Law Judge's ("ALJ") final opinion.

Andersen alleges she has been disabled since February 2, 2001, based on her back and leg pain and depression (Tr. 37, 54, 90).[1] Andersen filed a brief (Filing No. 17) and a reply brief (Filing No. 21) in support of this administrative appeal.

---

[1] Andersen does not challenge the ALJ's finding that her depression was not severe; thus Andersen's mental health records and/or condition will not be discussed in this memorandum.

The Commissioner filed the administrative record ("Tr.") and a brief (Filing No. 20) in opposition.  In her appeal, Andersen asks that her case be reversed and benefits awarded or remanded for three reasons: (1) the ALJ failed to accord adequate weight to the opinion of Andersen's treating physician, Mohsin Khan, M.D.; (2) the ALJ did not properly explain his findings regarding the credibility of Andersen; and (3) the ALJ committed an error of law by relying on an improper hypothetical question when examining the vocational expert ("VE").  Upon review, the Court finds the Commissioner's decision is supported by substantial evidence and should be affirmed.

**I. BACKGROUND**

Andersen was born in 1953 (Tr. 37).  She received her general equivalency degree in 1995 (Tr. 58).  She worked as a welder, certified nurse's assistant, cook, driver, home health aide, and most recently as an order clerk at her son's body shop until May 30, 2000 (Tr. 55, 89).  She left her position as an order clerk not because of her alleged disability, but because she "couldn't get along with [her] son's wife" (Tr. 55).  At the time Andersen filed for benefits, she lived in her own low-income apartment in Lexington, Nebraska, and reported that she was "in the process of going to live with her aged parents [in Eddyville, Nebraska] and help take care of them" (Tr. 111, 113).  Her date of last insured is June 20, 2005 (Tr. 15).

**A. Medical Records**

On July 11, 2001, five months after Andersen's alleged onset date, Andersen presented to her primary care physician Pat Unterseher, M.D., with complaints of low back pain related to coccygdynia (Tr. 110). After unsuccessful treatment of her condition with pain medications and injections and a worsening of the associated pain due to a slip and fall on the ice, Andersen underwent surgical removal of her tailbone on June 10, 2002 (Tr. 96-98, 110, 127, 175). The surgery was performed by Doak Doolittle, M.D., at Tri-County Area Hospital in Lexington, Nebraska (Tr. 96). The surgery was completed without complication, and Andersen was discharged the same day with a prescription for Darvocet (Tr. 96).

Two months later, on August 27, 2002, Andersen reported to Dr. Unterseher for follow-up (Tr. 106). Andersen did not complain of ongoing back pain; however, she reported only that she was concerned she had an infection in her lower back where she had surgery (Tr. 106). Dr. Unterseher noted there was no evidence of an infection and recommended Andersen soak in the bathtub twice daily (Tr. 106).

Nine months later, on May 15, 2003, Andersen returned to Dr. Unterseher with complaints of chest pain and tightness, "some back pain," and swollen, tender feet (Tr. 103). On examination, Andersen's heart rate and rhythm were regular, and

an EKG and chest x-ray were normal (Tr. 99-100, 103).  X-rays of her feet also revealed no fractures or dislocations (Tr. 103).  Dr. Unterseher assessed generalized edema, chest pain, and back pain, and prescribed Darvocet and Maxzide (Tr. 103).

On August 23, 2005, Andersen presented to Mark Jones, M.D., for a disability examination (Tr. 117-21).  At the time of the examination, Andersen had not sought medical treatment for any sort of pain in two years (Tr. 117).  Andersen told Dr. Jones that she had back pain with prolonged sitting, standing, and walking, but said she treated her pain with only Tylenol (Tr. 117).  On examination, Andersen had a good range of motion and strength in her arms and legs and could get up and down from the examination table without difficulty (Tr. 118).  Andersen showed a little tenderness in her lower back and moved with a little discomfort (Tr. 118).  X-rays of the area, however, only revealed a "real low grade L4-5 spondylolisthesis [and an] otherwise unremarkable lumbar spine" (Tr. 118).

On September 6, 2005, Andersen called Dr. Jones complaining of hip and back pain; Dr. Jones gave her a prescription for Ultram per verbal order (Tr. 125).  On September 24, 2005, Andersen returned to Dr. Jones with complaints of pain in the right buttock that worked down the leg (Tr. 123-24).  On examination, Andersen appeared lethargic and slow, but had normal muscle strength and range of motion throughout her legs (Tr. 123-

24).  Dr. Jones assessed sciatica and prescribed Prednisone (Tr. 124).  On October 10, 2005, Dr. Jones prescribed Darvocet again by verbal order (126).

Meanwhile, at the request of the state on September 2, 2005, and October 31, 2005, Glen Knosp, M.D., and J. Reed., M.D., state Disability Determination Service physicians, completed physical residual functional capacity ("RFC") assessments based on review of Andersen's file (Tr. 143-53).  Drs. Knosp and Reed opined, based on their review of Andersen's medical records, that Andersen could perform some medium exertion-level work and was not disabled (Tr. 144-53).  They opined Andersen could lift and carry 50 pounds occasionally and 25 pounds frequently, and sit, stand, and walk six hours in an eight-hour workday (Tr. 144, 146).  They also opined Andersen could balance and climb ramps and stairs frequently, and that Andersen could occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, and scaffolds (Tr. 144, 147).

On May 5, 2008, Andersen saw Dr. Khan in consultation for back pain and right hip and leg pain (Tr. 154-59).  At the time of the examination, Andersen had not sought medical treatment for any sort of pain in more than two years (Tr. 154-49).  Examinations were positive for leg swelling and an antalgic gait (Tr. 154, 158).  Dr. Khan ordered a lumbar spine MRI, nerve conduction study, and EMG, which revealed evidence of an acute

right L5 radiculopathy and sublaxation at L4-L5, but no stenosis (Tr. 154-157). Dr. Khan also gave Andersen a Medrol Dosepak for temporary relief (Tr. 154). After only two treatment sessions, Dr. Khan referred Andersen to neurosurgeon Chinyere Obasi, M.D., for a neurological assessment (Tr. 154).

On May 19, 2008, Andersen saw Dr. Obasi (Tr. 163-165). Andersen continued to complain of back pain that radiated into her right leg (Tr. 163). She also reported having tingling and numbness in her right leg (Tr. 163). Andersen reported her ability to change positions and Darvocet had provided her some relief from pain, but claimed her pain worsened with lifting, walking, or prolonged sitting (Tr. 163). On examination, Andersen had normal strength throughout her arms and legs (Tr. 164). Straight-leg raises, however, were positive for pain (Tr. 164). Dr. Obasi reviewed plaintiff's lumbar spine MRI, noting that it showed subluxation at L4-L5 "with mild central canal stenosis at this level and moderate lateral recessed stenosis to the right side at this level" (Tr. 164). Based on this evaluation, Dr. Obasi prescribed Darvocet and referred Andersen to the pain management physician at Good Samaritan Hospital, Kevin Balter, M.D. Dr. Obasi told Andersen she should undergo treatment with a pain management specialist before he would consider surgery (Tr. 164).

Meanwhile, on June 12, 2008, Dr. Khan completed a medical source statement (Tr. 160). The statement indicates Dr. Khan only treated Andersen between May 5, 2008, and May 15, 2008 (Tr. 160). Dr. Khan opined that Andersen could not stand for six hours or alternate between sitting and standing for eight hours (Tr. 160). He also opined that Andersen could not climb, kneel, crouch, or crawl, and that Andersen could only occasionally stoop, balance, reach overhead, or walk on uneven surfaces (Tr. 161). Finally, he said Andersen's pain prevented her from concentrating 90 percent of the day (Tr. 162).

Andersen presented to Dr. Balter on July 25, 2008, on referral from Dr. Obasi (Tr. 174). Andersen reported to Dr. Balter that she had "slowed down significantly" due to her pain, and that her pain was worse with prolonged sitting, standing, and walking (Tr. 174). Dr. Balter diagnosed Andersen with sacroiliac joint arthralgia and lumbar facet arthralgia (Tr. 19). Dr. Balter recommended treatment with steroid injections and water aerobics (Tr. 178). During the next month, plaintiff returned to Dr. Balter for three rounds of steroid injections (Tr. 166-173).

**B. Andersen's Reported Daily Activities and Symptoms**

In July of 2005, Andersen completed a Supplemental Disability Report in which she indicated she could read, write, and understand English (Tr. 54). She also reported she still performed various household chores, including watering the lawn,

cooking for herself, washing dishes, and doing laundry, but could no longer "play and skate" with her grandchildren (Tr. 64-65, 66). She also reported she could drive and go to the store when needed, and that she enjoyed doing crafts for 30 minutes at a time and watching television and using the computer for three or four hours a day (Tr. 65). Andersen also reported she had no trouble sleeping through the night, and that she did not nap during the day (Tr. 66). Finally, Andersen indicated that she was taking Tylenol for relief of her pain (Tr. 66).

  That same month, during a consultative psychological evaluation conducted in connection with her disability application, Andersen reported that she was not taking any pain medication "for fear of becoming addicted" (Tr. 111). Andersen reported she gambles a lot and goes to the Indian casino in Kansas with her mother-in-law where she plays the slots (Tr. 113). Andersen admitted her "gambling could become a problem if she let it" (Tr. 113). Anderson also reported she babysits her granddaughter, plans on moving in with her parents to help take care of them, shops frequently, plays games and looks up genealogy on her computer, and enjoys reading mysteries, love stories, and the encyclopedia (Tr. 113).

  Andersen has been widowed for over 15 years (Tr. 176). She claims to have gained over 100 pounds since becoming a widow, weighing 238 pounds as of 2008 (Tr. 174-75). Andersen denies

-8-

current alcohol or drug use, although she used to have issues with alcohol; but admitted in 2008 she smokes at least a half a pack of cigarettes a day (Tr. 113, 175).

At her June 8, 2009, hearing, Andersen testified she could not sit or stand for six hours because her legs go numb (Tr. 20, 204-05). Instead, she testified she could only sit for one hour before having to get up and move around, and that she could only stand for one-half hour at a time, or for a total of three hours in an eight-hour workday (Tr. 206-07). Finally, she testified she takes Tylenol and Aleve for pain, and Darvocet for sleep (Tr. 205).

**C. Procedural Background**

Andersen filed an application for disability benefits and supplemental security income benefits on June 30, 2005 (Tr. 40). The Commissioner denied benefits initially and on reconsideration, and benefits were denied by an ALJ (Tr. 4). Andersen requested review by the Appeals Council on August 28, 2008 (Tr. 36). The Appeals Council granted the request for review and remanded the case to the ALJ with directions (Tr. 2-6). On June 8, 2009, the ALJ held a hearing (Tr. 185). Andersen was represented by counsel and testified, and Thomas Dashalet, a VE, and Walter Doren, M.D., a board-certified orthopedic surgeon/ medical expert, also testified (Tr. 185).

Dr. Doren testified at Anderson's hearing that he had reviewed the medical records in this case, but did not see a report from Dr. Obasi (Tr. 191-92). Dr. Doren noted that the records, however, did include a lumbar spine MRI and EMG, which revealed an L5 radiculopathy, but no spinal stenosis (Tr. 192-96). Based on the records he reviewed, Dr. Doren testified that Andersen could lift 25 to 35 pounds occasionally and 10 to 15 pounds frequently, provided she was lifting with her legs and did not have to bend over when lifting (Tr. 197, 200). Dr. Doren also testified that he believed Andersen could sit, stand, and walk six hours each during an eight-hour workday, provided Andersen could change positions every one to two hours (Tr. 197-98). Dr. Doren also believed, however, Andersen should not crawl, but testified Andersen could perform occasional bending, stair climbing, stooping, kneeling, and crouching, and frequent balancing (Tr. 197-98). Finally, Dr. Doren testified that Andersen would need to avoid moderate exposures to hazards, such as moving machinery and unprotected heights (Tr. 198).

The ALJ then posed two hypothetical questions to the VE (Tr. 210-13). The first question asked whether an individual with the limitations described by Dr. Doren could perform work as an order clerk (Tr. 211-12). The vocational expert answered "Yes" (Tr. 212). The second question asked whether an individual with the limitations described by Dr. Khan in his 2008 medical

source statement could perform any of Andersen's past relevant work or other jobs (Tr. 212-13). The vocational expert answered "No" (Tr. 213).

On August 25, 2009, the ALJ issued an opinion and determined Andersen was not disabled under the Act at any time from the alleged onset date, February 2, 2001, to the date of his decision.

In evaluating Andersen's claim, the ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a).[2] At step one, the ALJ found that Andersen has

---

[2] The ALJ performs the following five-step sequential analysis to determine whether a claimant is disabled:

> At the first step, the claimant must establish that [she] has not engaged in substantial gainful activity. The second step requires that the claimant prove [she] has a severe impairment that significantly limits [her] physical or mental ability to perform basic work activities. If, at the third step, the claimant shows that [her] impairment meets or equals a presumptively disabling impairment listed in the regulations, the analysis stops and the claimant is automatically found disabled and is entitled to benefits. If the claimant cannot carry this burden, however, step four requires that the claimant prove [she] lacks the RFC to perform [her] past relevant work. Finally, if the claimant establishes that [she] cannot perform [her] past relevant work, the burden shifts to the Commissioner at the fifth step to prove that there are other jobs in the national economy that the claimant can perform.

*Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006).

not engaged in substantial gainful activity since her alleged onset date (Tr. 17).  At step two, the ALJ found Andersen had the severe medical impairment of degenerative disc disease (Tr. 17). At step three, the ALJ found Andersen's impairment does not meet or medically equal one of the listed presumptively disabling impairments (Tr. 18).  At step four, the ALJ found that Andersen has a RFC of performing work that falls between light and medium-exertion levels, and is thus capable of performing her past relevant light work as an order clerk (Tr. 18-21).  Because the ALJ found that Andersen could return to past relevant work at step four, he made no finding at step five.  The Appeals Council denied Andersen's request for review of the ALJ's decision on May 27, 2010; therefore, the ALJ's decision stands as the final decision of the Commissioner (Tr. 7-10).

## II. DISCUSSION

### A. Standard of Review

When reviewing an ALJ's decision, the Court must determine whether the ALJ's decision complies with the relevant law and is supported by substantial evidence in the record as a whole.  *Martise v. Astrue*, 641 F.3d 909, 920 (8th Cir. 2011). Substantial evidence is:

> relevant evidence that a reasonable
> mind might accept as adequate to
> support a conclusion.  Substantial
> evidence on the record as a whole,
> however, requires a more
> scrutinizing analysis.  In the

-12-

>review of an administrative decision, the substantiality of evidence must take into account whatever in the record fairly detracts from its weight. Thus, the court must also take into consideration the weight of the evidence in the record and apply a balancing test to evidence which is contradictory.

*Id.* at 920-21 (quoting *Halverson v. Astrue*, 600 F.3d 922, 929 (8th Cir. 2010)). "'If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision.'" *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)). The Court may not reverse the ALJ's decision merely because the Court would have come to a different conclusion. *Teague v. Astrue*, 638 F.3d 611, 614 (8th Cir. 2011). Plaintiff bears the burden of proving disability. *Id.* at 615.

**B. Substantial Evidence Exists Supporting the ALJ's Decision**

**1. The ALJ Accorded Adequate Weight to the Opinion of Dr. Khan**

Andersen's first assignment of error is that the ALJ impermissibly discounted the opinion of Dr. Khan, who opined Andersen was not capable of performing sedentary light work. Generally, a treating physician's opinion is entitled to substantial weight. *Martise*, 641 F.3d at 925 (quoting *Brown v.*

*Astrue*, 611 F.3d 941, 951-52 (8th Cir. 2011)). However, "an ALJ need not defer to such an opinion when it is inconsistent with substantial evidence in the record." *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004); 20 C.F.R. § 404.1527(d). The ALJ determined other aspects of the record were inconsistent with Dr. Kahn's opinion of Andersen's inability to perform light work. These inconsistencies included Dr. Doren's opinion that Andersen could perform light sedentary work, the fact that Andersen's MRI did not show any compression or stenosis or other significant abnormality which would account for the severe functional limitations Dr. Kahn assigned, the fact that Andersen does not take "heavy duty" pain medications for her symptoms, and the fact that to present date, surgery has not been recommended for Andersen's condition.

Considering that Dr. Doren is a board-certified orthopedic surgeon, Dr. Khan only saw Andersen twice for treatment, and the other above-listed inconsistencies of the record, the ALJ properly deferred to Dr. Doren's opinion in accordance with 20 C.F.R. § 404.1627(d)(1-6). Andersen claims that because Dr. Doren did not review Dr. Obasi's medical records, his opinion should not be given greater weight than Dr. Khan's. The fact that Dr. Doren did not review Dr. Obasi's medical records, however, is harmless. Dr. Doren completed his own individual assessment of Andersen's MRI and EMG, finding no

stenosis, which was consistent with Dr. Kahn's review of the MRI and EMG –- even after Dr. Khan reviewed Dr. Obasi's finding of mild to moderate stenosis pursuant to his review of the MRI and EMG.  Ultimately then, Dr. Doren and Dr. Khan came to similar medical conclusions, but assigned different limitations.  If "the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision."  *Partee*, 638 at 863 (quotation omitted).  The Court concludes the ALJ accorded adequate weight to the opinion of Dr. Kahn.

Andersen further claims the ALJ erred in crediting Dr. Doren's opinion because the reason Andersen did not treat with "heavy duty" pain medications was because she feared becoming addicted and surgery "may" be a possibility for her in the future.  The Court finds, regardless if either of these claims has merit, based on Andersen's daily activities discussed in Section II.B.2 and the significant gaps in time in Andersen's course of seeking medical attention for her alleged disability, the ALJ's reliance on Dr. Doren's opinion is appropriately based on the totality of the evidence.  *See Edwards v. Barnhart*, 314 F.3d 964, 967-68 (8th Cir. 2002) ("It was within the province of the ALJ to discount [claimant's] claims of disabling pain in view of her failure to seek ameliorative treatment.").

### 2. The ALJ Properly Explained His Findings Regarding Andersen's Credibility

Andersen next argues the ALJ improperly determined she was not credible and thus erred in failing to give her statements regarding her decision not to take pain medications in fear of becoming addicted and the alleged pain and numbness of her leg, buttock, and shoulders proper weight.  An ALJ's credibility findings must be supported by substantial evidence.  *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005) (The court defers to the ALJ's credibility finding if it is supported by good reasons and substantial evidence).  "An ALJ may not reject a claimant's subjective complaint . . . .  But an ALJ may take the claimant's medical records into account when determining his or her credibility, and may discount the claimant's subjective complaints if there are inconsistencies in the record as a whole."  *Roberson v. Astrue*, 481 F.3d 1020, 1025 (8th Cir. 2007) (citing *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)).  Here, the ALJ recognized the *Polaski* considerations, and took into account Andersen's testimony concerning her daily activities, dosage of pain medications, the lack of restrictions placed on her activities, as well as her medical records, before deciding that her statements regarding her inability to work were not credible.  *See id.*

As discussed in Section II.B.1, the ALJ found Andersen's subjective complaints of pain were not substantiated

-16-

by the objective medical records in evidence.  Also, as Andersen has been able to do housekeeping and frequent shopping, and has continued social activities, including out-of-state gambling excursions, the ALJ found Andersen's impairments are not as limiting as alleged.  *See e.g.*, *Roberson*, 481 F.3d at 1025.  Furthermore, as Andersen admitted she continues to care for her granddaughter and parents and plays on the computer for up to three or four hours a day and enjoys crafts, the Court concludes the ALJ's credibility finding is based on substantial evidence of the record.  *See id.*

### 3. The ALJ Properly Relied on Vocational Expert Testimony

In this case, the ALJ posed two questions to the VE at Andersen's hearing, and relied on the VE's response to the hypothetical based upon Dr. Doren's opinion that Andersen could perform past relevant work as an order clerk.  Although Andersen correctly observes that the ALJ did not include Dr. Kahn's recommended limitations in this hypothetical, the ALJ was not required to do so for the reasons discussed in Section II.B.1 and 2 of this opinion.  After reviewing the record as a whole, the Court finds substantial evidence supports the ALJ's conclusion that Andersen could perform past relevant work as an order clerk.

## III. CONCLUSION

Substantial evidence in the record as a whole supports the ALJ's determination that Andersen was not disabled, and the

ALJ's decision complies with the relevant law.  The Commissioner's denial of Andersen's disability benefits and supplemental social security income benefits claim will be affirmed.  A separate order will be entered in accordance with this memorandum opinion

DATED this 23rd day of August, 2011.

BY THE COURT:

/s/ Lyle E. Strom
_____
LYLE E. STROM, Senior Judge
United States District Court